UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JEDA CAPITAL-56, LLC,

                Plaintiff,

-against-                              5:12-cv-419 (LEK/DEP)

LOWE'S HOME CENTERS, INC.,

                Defendant.

_____

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff JEDA Capital-56, LLC ("JEDA") commenced this action against Defendant Lowe's Home Centers, Inc. ("Lowe's") on March 7, 2012. Dkt. No. 1 ("Complaint"). Currently pending before the Court are Lowe's Motion to dismiss and JEDA's Motion for leave to amend the Complaint and join parties. Dkt. Nos. 12 ("Motion to Dismiss"); 21 ("Motion to Amend"). For the following reasons, JEDA's Motion to Amend is granted in part and denied in part, and Lowe's Motion to Dismiss is denied as moot.

**II.    FACTS[1]**

JEDA has developed a number of sites and stores for Lowe's throughout New York State. Dkt. No. 21-2 ("Proposed Amended Complaint") ¶ 6. Around 2005, Lowe's requested that JEDA

---

[1] Because the standard for evaluating a motion to amend a complaint for futility is the same as the standard for a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, see Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991), the allegations of the Proposed Amended Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

locate a site to construct a store in Potsdam, NY. Id. ¶ 7. Lowe's and JEDA subsequently entered into an option contract for the purchase and sale of a pad-ready site. Id. ¶ 12. Lowe's and JEDA also entered into a contract with the engineering firm Clough, Harbour & Associates ("CHA"), under which CHA would provide JEDA design and construction drawings based on Lowe's specifications. Prop. Am. Compl. ¶¶ 8-9.

Lowe's closed on the site on May 20, 2008, at which time JEDA and Lowe's executed a Site Development Agreement governing the specific work JEDA would perform in connection with the construction of the store, and the compensation JEDA would receive from Lowe's. Dkt. No. 12-4 ("SDA");[2] Prop. Am. Compl. ¶¶ 15-16. The work included, among other things: demolition; clearing; grading; compaction of a pad for the Lowe's store; pouring concrete for the foundation; erection of steel supports; compaction of parking areas; installation of utility lines and hookups; installation of storm drains; landscaping; construction, paving, lining and striping of roadways; construction of curbing and sidewalks; signalization of the main entrance; construction of a retaining wall; construction of a water tower; stabilization of the site; provision of water; installation of sewer lines; and obtainment of all inspections, approvals, and permits for the work. SDA §§ 2-3.

In exchange for this work, Lowe's agreed to pay JEDA $4,490,000. SDA § 5(B); Prop. Am. Compl. ¶ 16. This amount would not be increased due to unforeseen circumstances, except that change orders "benefitting" the site and "requested and approved by Lowe's" would be paid by Lowe's. SDA § 5(C); Prop. Am. Compl. ¶ 18. Notwithstanding that provision, all changes required to conform the work plans "to any higher standards required by any governmental agency,

---

[2] The Court may consider the SDA because the Proposed Amended Complaint incorporates it by reference. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Prop. Am. Compl. ¶ 16.

authority, code, law, or site conditions" were JEDA's "responsibility and expense." SDA § 5(C). JEDA and Lowe's agreed "to cooperate with each other in order that the [work] being performed . . . be completed in a timely fashion and at no increase in cost to the other." Id. § 4(E).

The SDA gave Lowe's the right to inspect the work from time to time and required JEDA to inform Lowe's when an element of the work was complete and ready for final inspection. Id. § 4(C)-(D). Among the conditions for payment of JEDA's compensation was that JEDA have "satisfactorily completed" the work, and that Lowe's "have inspected and approved all such work (or been afforded a reasonable opportunity to inspect such work without having done so)." Id. § 5(E)(i)-(ii). A separate provision provided that the $200,000 sum designated as compensation for construction of a water tower (the "Water Tower Funds") was payable upon "final completion of the Water Tower to the satisfaction of Lowe's." Id. § 5(L); Prop. Am. Compl. ¶ 27. Payments to JEDA were due within thirty days of becoming payable. SDA § 4(G); Prop. Am. Compl. ¶ 29.

A number of disputes arose between JEDA and Lowe's during the course of construction, and JEDA incurred significant cost increases due to Lowe's and CHA's flawed plans. Prop. Am. Compl. ¶¶ 20-26. Among these cost increases was $897,181 for conforming the Highway Improvement Plans ("HIP") to the requirements of the New York State Department of Transportation ("DOT"). Id. ¶ 21. Lowe's specifically directed JEDA not to communicate with the DOT. Id.

The store opened on December 4, 2009, and the water tower has been in service since November 2009. Id. ¶¶ 27, 30. JEDA has received payments totaling only $3,958,649.99, and has not received the Water Tower Funds. Id. ¶¶ 27-28.

3

## III. PROCEDURAL HISTORY

JEDA filed its Complaint against Lowe's on March 7, 2012, including causes of action for: (1) Breach of Contract; (2) Changes, Delays, and Disruptions; (3) Account Stated; (4) Unjust Enrichment; and (5) Attorney's Fees. Compl. Defendant Lowe's filed its Motion to Dismiss on September 27, 2012, arguing that the breach of contract claim is "in large part barred" by the terms of the SDA, and that the second, fourth, and fifth causes of action should be dismissed. Mot. to Dismiss.

Following service of the Motion to Dismiss, JEDA advised Lowe's of its intention to file an amended complaint to "address the issues raised in the Motion to Dismiss." Mot. to Am. ¶ 3. Defendant did not consent to filing of the Proposed Amended Complaint, necessitating the filing of the Motion to Amend under Rule 15(a)(2) of the Federal Rules of Civil Procedure. Mot. to Am. ¶ 3. JEDA attached its Proposed Amended Complaint, which includes causes of action for: (1) Breach of Contract; (2) Account Stated; and (3) Unjust Enrichment; and would also join the escrow agent Fidelity National Title Group as a defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure.[3] Prop. Am. Compl. ¶¶ 3, 31-33. Defendant Lowe's filed its Memorandum of law in opposition to Plaintiff's Motion to Amend the Complaint on January 31, 2013, arguing that certain proposed amendments would not survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and would therefore be futile. Dkt. No. 24 ("Opposition"). JEDA filed a Reply memorandum in support of its Motion to Amend on February 15, 2013. Dkt. No. 25 ("Reply").

---

[3] Rule 19 requires joinder of a person if "in that person's absence, the court cannot accord complete relief among existing parties." FED. R. CIV. P. 19(a)(1)(A).

4

## IV.     LEGAL STANDARD

JEDA's Motion to Amend is made pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which provides that "leave [to amend] shall be freely given when justice so requires." FED. R. CIV. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962); Manson v. Stacescu, 11 F.3d 1127, 1133 (2d Cir. 1993).  Nevertheless, it is appropriate for leave to be denied where the proposed amendment would be futile, such as where the proposed amendment would be subject to dismissal for failure to state a claim upon which relief may be granted.  See Foman, 371 U.S. at 182; Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993); Ruiz v. Suffolk Cnty. Sheriff's Dep't, No. 03-cv-3545, 2008 WL 4516222, at *2 (E.D.N.Y. Oct. 2, 2008) (leave to amend should be denied where the claim is "clearly frivolous or legally insufficient on its face") (internal quotation marks and citation omitted); Benfield v. Mocatta Metals Corp., No. 91-cv-8255, 1992 WL 177154, at *1 (S.D.N.Y. July 13, 1992) ("If a proposed amendment would be insufficient to withstand a motion to dismiss, it is futile and leave to amend should be denied.").  Testing JEDA's Motion to Amend for futility therefore requires a discussion of the Rule 12(b)(6) standard.  See Nettis v. Levitt, 241 F.3d 186, 194 n.4 (2d Cir. 2001), overruled on other grounds by Slayton v. Am. Exp. Co., 460 F.3d 215 (2d Cir. 2006); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule

5

12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

## V. DISCUSSION

### A. JEDA's Breach of Contract Claim

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).

Lowe's challenges the adequacy of JEDA's performance and argues that certain alleged actions and inactions by Lowe's did not constitute breach. See Opp'n at 5-10. Based on these arguments, Lowe's urges the Court to deny JEDA's Motion to Amend as futile to the extent the breach of contract claim is based on (1) increases in the cost of complying with DOT requirements, (2) non-payment of the Water Tower Funds, and (3) non-payment of the balance of the SDA principal amount, as well as associated late charges and unpaid interest. Id.

6

*1. JEDA's Costs in Complying with DOT Requirements*

JEDA's Proposed Amended Complaint includes numerous factual allegations as to the work that JEDA and its vendors and subcontractors performed to execute the HIP in compliance with DOT requirements. Prop. Am. Compl. ¶¶ 20, 21, 22(k). JEDA alleges that the DOT issued seven permit amendments for the project, that the permit designs included "several impossible provisions," and that "Lowe's directed JEDA not to . . . communicat[e] with the DOT." Prop. Am. Compl. ¶¶ 20, 21, 22(k). As a result of changes to the project, JEDA's subcontractor's cost increased by $897,181. Id. ¶ 21. Lowe's argues that JEDA assumed all risk of delay and of changes required by government agencies, and furthermore that Lowe's is not liable for these additional costs because it did not "request and approve" them as described in SDA § 5(C). Opp'n at 6-8.

Under New York law, interpretation of a contract is a matter of law for the court to decide. Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) (citing K. Bell & Assocs. Inc. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996)). The court must determine whether the contract is unambiguous with respect to the issue disputed by the parties. Id. "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" American Home Assur. Co. v. Hapag Lloyd Container Linie, GMBH, 446 F.3d 313, 316 (2d Cir. 2006) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 906 (2d Cir. 1997)). If no such ambiguity exists, courts must interpret the contract "so as to give effect to all of its provisions and 'cannot and should not accept an interpretation that ignores the interplay of the terms, renders certain terms inoperable, and creates a

conflict where one need not exist.'" AngioDynamics, Inc. v. Biolitec, Inc., 606 F. Supp. 2d 300, 304 (N.D.N.Y. 2009) (quoting Net2Globe Int'l, Inc. v. Time Warner Telecom of New York, 273 F. Supp. 2d 436, 445 (S.D.N.Y. 2003)).

The SDA clearly assigns to JEDA the responsibility and expense of "all changes which are required to conform the Site Construction Documents to any higher standards required by any governmental agency." SDA § 5(C). Furthermore, whether Lowe's "requested and approved" or merely "reviewed and approved" the changes to the HIP is irrelevant to the question of who should pay for associated costs. The sentence, "Any cost associated with change orders benefitting the Lowe's Tract requested and approved by Lowe's shall be paid by Lowe's," is followed two sentences later by, "Notwithstanding the foregoing, all changes which are required to conform the Site Construction Documents to any higher standards required by any governmental agency . . . shall be entirely Developer's responsibility and expense." SDA § 5(C). The SDA thereby unambiguously states that JEDA bears the responsibility for changes required to conform to higher governmental standards, regardless of who requested the changes. If the facts alleged in the Proposed Amended Complaint showed merely that DOT permitting requirements resulted in changes to the Site Construction Documents and that these changes increased JEDA's costs, there would be no claim for breach of contract.

However, the SDA contains other language, and the Proposed Amended Complaint contains other facts. The SDA states, "Developer and Lowe's agree to cooperate with each other in order that the Site Improvement Work being performed within the Commercial Center shall be completed in a timely fashion and at no increase in cost to the other." SDA § 4(E). And among the numerous allegations in the Proposed Amended Complaint, JEDA alleges that "Lowe's directed JEDA not to

8

have any communication with the DOT, as a Lowe's official had previously worked for CHA, and had experience with the DOT." Prop. Am. Compl. ¶ 21. Accepting this fact as true, one can infer that Lowe's interfered with JEDA's performance of its obligation to conform the site to DOT requirements. This fact, taken with the Proposed Amended Complaint's allegations of flawed plans produced by Lowe's, is sufficient to state a claim for breach of the cooperation clause in relation to the DOT permitting process. Although the SDA clearly assigns responsibility for cost increases from the permitting process to JEDA, JEDA may still seek damages based on Lowe's breach of its own contractual duties.

Accordingly, dismissal of the breach of contract claim as to the DOT permitting costs is inappropriate at this stage of the litigation. The amendment is therefore not futile and will be allowed.

### 2. *The Water Tower Funds*

JEDA alleges that Lowe's breached the SDA by withholding the $200,000 in Water Tower Funds. Prop. Am. Compl. ¶ 27. In its Motion to Dismiss, Lowe's argued that JEDA failed to plead the occurrence of a condition precedent to payment: the "final completion of the Water Tower to the satisfaction of Lowe's." SDA § 5(L); Mot. to Dismiss at 5; see also Opp'n at 8-9. JEDA attempted to cure this defect by alleging in the Proposed Amended Complaint that "the water tower has been in service without objection by Lowe's since approximately November 2009." Prop. Am. Compl. ¶ 27. Lowe's now argues that because the SDA states that "any failure to reject or object" to any of the work performed "shall not constitute, nor be deemed evidence of" Lowe's approval or satisfaction, JEDA's allegation of Lowe's satisfaction based on non-objection fails as a matter of law. Opp'n at 9.

9

"In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." FED. R. CIV. P. 9(c). Courts in the Second Circuit have been inconsistent as to whether Rule 9(c) requires plaintiffs to affirmatively plead performance of conditions precedent, but even where courts do require such allegations in the complaint, they have "consistently accepted only general averments of their fulfillment." Mendez v. Bank of Am. Home Loans Servicing, LP, 840 F. Supp. 2d 639, 648 (E.D.N.Y. 2012) (collecting and comparing cases). Accordingly, to the extent completion of the water tower "to the satisfaction of Lowe's" is a condition precedent to Lowe's obligation to release the Water Tower Funds, JEDA need only generally aver such satisfaction.[4]

JEDA has done so by alleging that "[t]he water tower was completed to the satisfaction of Lowe's as the water tower has been in service without objection since approximately November 2009." Prop. Am. Compl. ¶ 27. Lowe's contends that this factual allegation does not amount to an averment of satisfaction, because under the SDA failure "to reject or object to any of the work performed . . . 'shall not constitute, nor be deemed evidence of' Lowe's *approval or satisfaction*." Opp'n at 9 (quoting SDA § 4(D)) (emphasis added). But this contention relies on a mischaracterization of the SDA's actual language. The relevant sentence actually reads:

> The foregoing notwithstanding, any inspection by Lowe's and any failure to reject or object to any of the Site Improvement Work shall not constitute, nor be deemed to be evidence of, any *approval* by Lowe's of the Site Improvement Work, nor waive or release Developer from its obligation to construct and complete the Site Improvement Work in accordance with the Site Construction Documents and this Agreement.

SDA § 4(D) (emphasis added). The word "satisfaction" is absent, so although this clause may mean

---

[4] In contrast, "when denying that a condition precedent has occurred or been performed, a party must do so with particularity." FED. R. CIV. P. 9(c). Accordingly, it is Lowe's, not JEDA, that must plead with particularity on this issue.

10

that Lowe's failure to object does not release JEDA from its obligations under the SDA, it does not limit the term "satisfaction" as used in § 5(L)'s provision for payment of the Water Tower Funds.

"When a contract conditions performance upon the satisfaction of one party and is ambiguous as to the applicable standard of satisfaction, courts generally require performance to the satisfaction of a reasonable man, particularly when a definite objective test of satisfaction is available." Misano di Navigazione, SpA v. United States, 968 F.2d 273, 274 (2d Cir. 1992) (citing RESTATEMENT (SECOND) OF CONTRACTS § 228 (1981)); see also Blask v. Miller, 588 N.Y.S.2d 940, 942 (N.Y. App. Div. 1992) ("[W]hen contract duties are contingent upon a particular condition being 'satisfactory' to one party . . . that party's rejection of the condition is to be judged by an objective standard of reasonableness.").

The presence of the Site Improvement Plans, attached to the SDA, confirms that an objective standard is available for judging the reasonableness of Lowe's satisfaction, and the allegation that the water tower has been in service since approximately November 2009 is sufficient to create an inference that Lowe's dissatisfaction is unreasonable. Plaintiff has therefore met the low burden of generally averring that completion of the water tower was objectively satisfactory and has stated a plausible claim for breach based on non-payment of the Water Tower Funds. The amendment is not futile and will be allowed.

### 3. *Final Payment and Late Charges*

JEDA alleges that Lowe's has not paid the balance of the SDA contract and owes late charges for both the non-payment of the balance and the late payment of periodic payments.[5] Prop.

---

[5] "If any interim or final payment to a contractor is delayed beyond the due date . . . , the owner shall pay the contractor interest beginning on the next day at the rate of one percent per month or fraction of a month on the unpaid balance, or at a higher rate consistent with the

11

Am. Compl. ¶¶ 28-30. Lowe's argues that its approval of all work is a condition precedent to payment, and that it cannot be held liable for payment of the principal or late fees because this approval has not occurred. Opp'n at 9-10. The relevant clause of the SDA provides that payment to JEDA for completed work shall not be due until "Lowe's shall have inspected and approved all such work (or been afforded a reasonable opportunity to inspect such work without having done so)." SDA § 5(E)(ii). Lowe's once again argues that its failure to reject or object to the store cannot constitute approval, pointing to the sentence in SDA § 4(D) discussed in Part V.A.2., supra. Opp'n at 10.

Although § 5(E)(ii), unlike § 5(L) governing payment of the Water Tower Funds, does use the word "approved," JEDA need not affirmatively prove at this stage of the litigation that approval occurred. Rather, it need only generally aver that Lowe's "inspected and approved" the work, or that it had a "reasonable opportunity to inspect" the work and failed to do so.[6] See supra Part V.A.2. (discussing pleading of conditions precedent). In generally alleging that it performed its contractual obligations, that "the project has been completed to the satisfaction of Lowe's since December, 2009," and that "the Lowe's store has been open since December 4, 2009," JEDA has met this burden. Prop. Am. Compl. ¶¶ 30, 42. To the extent "completed to the satisfaction of Lowe's" (the Proposed Amended Complaint's language) differs from "inspected and approved by Lowe's" (the SDA's language), JEDA has, at a minimum, plead facts leading to an inference that Lowe's failed to fulfill its inspection duties when given a reasonable opportunity to do so.

---

construction contract." N.Y. GEN. BUS. LAW § 756-b(1)(a).

[6] Once again, to the extent Lowe's seeks to plead failure of a condition precedent, it must do so with particularity. FED. R. CIV. P. 9(c); see supra note 4.

12

The Proposed Amended Complaint states a claim for breach of contract as to unpaid payments and related late fees, and so the amendment will be allowed.

**B. JEDA's Unjust Enrichment Claim**

JEDA's Proposed Amended Complaint includes an alternative cause of action for unjust enrichment. Prop. Am. Compl. at 14. Lowe's argues that the unjust enrichment claim fails as a matter of law because a valid and enforceable contract—the SDA—already governs the dispute. Opp'n at 3. JEDA responds that its unjust enrichment claim is valid to the extent it performed work beyond the scope of the SDA. Reply at 5.

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A 'quasi contract' only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment." Clark-Fitzpatrick, Inc. v. Long Island R.R., 516 N.E.2d 190, 193 (N.Y. 1987) (citations omitted). "It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, *and the scope of which clearly covers the dispute between the parties.*" Id. (emphasis added); see also Union Bank v. CBS Corp., No. 08-cv-8362, 2009 WL 1675087, at *7 (S.D.N.Y. June 10, 2009) ("Decisions interpreting Clark-Fitzpatrick have made clear that the predicate for dismissing quasi-contract claims is that the contract at issue 'clearly covers the dispute between the parties.'") (quoting Clark-Fitzpatrick, 516 N.E.2d at 193).

Here, JEDA claims to have fully performed under the SDA, and has not alleged any facts showing that it performed work outside its scope. On the contrary, JEDA's Proposed Amended

13

Complaint makes clear that the additional work it allegedly performed falls squarely within the SDA's terms. The basic thrust of JEDA's claim is that Lowe's required it to perform work to specifications other than those included in the SDA and its accompanying documents. Prop. Am. Compl. ¶ 53. But the SDA contains clear and detailed terms describing the procedures for changing the Site Improvement Work, as well as for the allocation of any increases or decreases in costs resulting from such changes.

First, to the extent JEDA may claim that any departure from the work as delineated in SDA § 2 falls outside the scope of the agreement, § 5(C) lays out a detailed set of procedures for change orders, including the determination of which party bears the burden of any resulting cost increases. SDA § 5(C).

Second, to the extent JEDA may claim that compliance with governmental authorities required it to work beyond the scope of the agreement, the SDA makes clear that it was JEDA's responsibility to arrange and obtain all governmental approvals of the Site Improvement Work. SDA § 3(C). That JEDA's performance of these obligations might require alterations to the required work was clearly contemplated by the last sentence of § 1: "No changes shall be made to the Site Construction Documents without the prior written approval of Lowe's, except as may be necessary to satisfy any greater requirements of any governmental authority having jurisdiction thereover." SDA § 1. Furthermore, in addition to the generally applicable clause stating that JEDA's compensation "shall not be increased due to unforeseen circumstances or conditions, corrective work or overtime, the risks associated therewith being hereby assumed solely by the Developer," § 5(C) also states that "all changes which are required to conform the Site Construction Documents to any higher standards required by any governmental agency, authority, code, law, or

14

site conditions shall be entirely Developer's responsibility and expense." Id.; see also supra Part V.A.1.

Despite Lowe's alleged breach of the SDA, JEDA chose not to rescind the agreement, but to complete performance and sue for damages. Having chosen this course, JEDA is now limited to recovery of damages on the contract, and may not seek recovery based on an unjust enrichment theory. See Clark-Fitzpatrick, 516 N.E.2d at 193. Because JEDA has not pleaded facts showing that it performed any work beyond the scope of the agreement that it alleges Lowe's breached, its claim for unjust enrichment fails as a matter of law. Amending the Complaint as to this claim would be futile, and so the Motion to Amend is denied as to the unjust enrichment claim in the Proposed Amended Complaint.

## VI. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt. No. 21) for leave to amend the Complaint and join parties is **GRANTED in part and DENIED in part**. Plaintiff is **GRANTED leave** to file an Amended Complaint consistent with the proposed First Amended Complaint *except* inasmuch as the proposed First Amended Complaint alleges a claim for unjust enrichment. Leave to amend as to the claim for unjust enrichment is **DENIED**. Plaintiff shall, **within (10) days** of the filing of this Memorandum-Decision and Order, file and serve an Amended Complaint consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Defendant's Motion (Dkt. No. 12) to dismiss is **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

15

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED: September 30, 2013
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge